**David Earl WILSON,**
**Petitioner-Appellant,**

v.

**Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary at Angola, Louisiana, Respondent-Appellee.**

**No. 86–3537.**

United States Court of Appeals,
Fifth Circuit.

Aug. 17, 1987.

James Lloyd Volling, Faegre & Benson, Minneapolis, Minn., William P. Quigley, New Orleans, La., for petitioner-appellant.

William R. Campbell, Jr., New Orleans, La., for respondent-appellee.

## ON PETITION FOR REHEARING

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The petition for rehearing asks that, in addition to the relief granted, we vacate that portion of the district court's judgment dismissing Wilson's claim of ineffective assistance at the guilt phase of his trial. Wilson's allegations in support of this claim were clearly insufficient to require an evidentiary hearing, but the issue presented by the petition for rehearing is not merely whether such a hearing should be held. This court has already ordered an evidentiary hearing on Wilson's claim of ineffective assistance at the sentencing phase of his trial, a claim based on essentially the same evidence that Wilson relies on in support of his claim that trial counsel was ineffective at the guilt phase. The present issue is simply whether that evidence necessarily presented at the evidentiary hearing should be considered on both ineffectiveness claims. Because the refusal to do so carries with it the potential for grave injustice without any real justification, we reconsider our earlier ruling on this simple question.

### I.

As stated in our original opinion, to receive a federal evidentiary hearing, a petitioner must allege facts that, if proved, would entitle him to relief.[1] This requirement avoids wasting federal judicial resources on the trial of frivolous habeas corpus claims.[2] It also reduces federal-state tensions in cases in which a federal hearing would serve no good purpose.[3]

Applying this requirement, we held in our original opinion that Wilson's allegations in support of his claim of ineffective assistance at the guilt phase of his trial were insufficient to require an evidentiary hearing. As we there noted, the standard in Louisiana for proving incompetency at the guilt-innocence phase is "whether the defendant had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he had a rational as well as factual understanding of the proceedings against him."[4] We continued:

> In *Bruce v. Estelle*, we stated that proof of incompetence to stand trial requires facts that "positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the

---

1. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963).

2. *Id.* at 318, 83 S.Ct. at 760.

3. *Id.*

4. *Wilson v. Butler*, 813 F.2d 664, 670 (5th Cir. 1987).

mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial."[5]

We also noted that the insanity defense in Louisiana requires proof that the offender be *"incapable* of distinguishing between right and wrong with reference to the conduct in question."[6]

Wilson alleged that his trial attorney had failed to adequately investigate Wilson's background and formulate an appropriate defense based on Wilson's mental incapacity. According to Wilson, had his attorney adequately investigated the case, the attorney would have raised an insanity defense and also would have challenged Wilson's competence to stand trial.

In support of this ineffectiveness claim, Wilson relied on a number of affidavits regarding his medical history and present medical condition. Critical to Wilson's claim was the affidavit of a clinical psychologist, Marc Zimmerman. Zimmerman stated his professional opinion that Wilson suffered from a mental disease or defect that "impaired" his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Zimmerman stated that Wilson was likely suffering from this condition both at the time of the murder and at the time of his trial in state court. According to Zimmerman, Wilson's condition also "impaired" his competence to stand trial.

■ We concluded that these allegations, even if true, failed to state the existence of a valid insanity defense. We adhere to that opinion. Zimmerman's opinion merely states that, based on Wilson's presently available records, as well as their personal interview, Wilson's mental capacity was *"impaired."* This conclusion and the evidence on which it was based, taken together, do not even assert that Wilson was incapable of distinguishing between right and wrong or that he was incapable of meaningful participation in his trial. Wilson was not, therefore, prejudiced by

his attorney's failure to investigate Wilson's mental capacity.

■ Although insufficient to allege ineffective assistance at the guilt phase of his trial, the same allegations regarding Wilson's medical history and condition were sufficient to require a hearing on his claim of ineffective assistance at the sentencing phase. In particular, Zimmerman's affidavit was sufficient to allege the existence of a mitigating circumstance, mental impairment, never presented to the jury at the sentencing phase of Wilson's trial. We therefore remanded the case to the district court for an evidentiary hearing on whether the performance of Wilson's attorney was deficient in failing to present this mitigating circumstance to the jury, and if so, whether Wilson was prejudiced by the deficient performance.

## II.

■ The failure of a habeas corpus petitioner to allege facts sufficient to support a particular claim usually warrants dismissing that claim even if a hearing is required on other claims. As we have indicated, excluding such a claim from trial prevents a waste of judicial resources and avoids an unnecessary federal intrusion into the integrity of the state criminal justice system. Applying the general rule in this case, we remanded the case for a hearing only on Wilson's claim that counsel was ineffective at the sentencing phase of the trial, and affirmed the district court's dismissal of Wilson's claim of ineffective assistance at the guilt phase.

Although our original action was appropriate for the usual habeas case, several factors unique to this case compel the conclusion that we erred in remanding the case for a hearing solely on Wilson's claim of ineffective assistance at sentencing. First, neither of the reasons for *Townsend*'s requirement of sufficient factual allegations

---

5. *Id.* (quoting *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir.1973), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977)).

6. *Id.* (emphasis in original) (quoting La.Rev. Stat.Ann. § 14:14 (West 1986)).

justifies limiting consideration on remand to this single claim. As we recognized in our original opinion, both of Wilson's ineffective assistance claims are based on essentially the same evidence. At the evidentiary hearing already ordered, Wilson will necessarily seek to make the strongest possible showing of mental impairment, *i.e.*, insanity. Permitting the district court to consider this evidence as it relates to Wilson's claim of ineffective assistance at the guilt phase of his trial would consume few if any additional resources.

We should also bear in mind that *Townsend* was concerned with "wast[ing] the time of the federal courts in the trial of *frivolous* claims." [7] While we express no opinion on the merits of the claim, and, indeed, for reasons stated in our original opinion, doubt its validity, the argument, while doubtful, is not devoid of substance.

*Townsend*'s second concern was with the tension created in federal-state relations when a federal evidentiary hearing is ordered. Here, however, we have already ordered a hearing on one of Wilson's ineffective assistance claims. Any additional federalism concern caused by expanding the scope of inquiry, but not the scope of the evidence, at the hearing would be minimal. Allowing the district court to consider the evidence as it relates to Wilson's claim of ineffective assistance at the guilt phase of his trial does, of course, permit inquiry into the validity of Wilson's conviction, in addition to the validity of his sentence. Nonetheless, if the evidence necessarily presented at the hearing reveals that Wilson was convicted in violation of the sixth amendment, the state has no legitimate interest in preventing the remedy of that violation.

Weighing against the lack of justification for excluding further consideration of Wilson's insanity claim is the potential for grave injustice if the district court ignores evidence presented on remand relevant to that claim. The essential purpose of federal habeas corpus is to insure that no petitioner is punished in violation of the Constitution. When, as here, the punishment involved is death, a punishment qualitatively different from all others, fundamental justice demands heightened vigilance in evaluating a petitioner's constitutional claims.

### III.

There is nothing novel in "afford[ing] a death sentenced prisoner every opportunity, consistent with the interests of the state, to present his constitutional claims." [8] In *Autry v. Estelle*, the petitioner had failed to raise a claim of ineffective assistance of counsel in his first federal habeas corpus petition.[9] Although Autry's attorney had researched the ineffectiveness claim and obtained supporting affidavits, he failed to raise the issue until the Supreme Court denied Autry's first petition—less than two days before the scheduled execution. The following morning, the district court held an expedited hearing on the ineffectiveness issue and denied relief. On appeal later that day, Autry argued that the hearing had been inadequate because of an insufficient opportunity to secure witnesses. This court rejected Autry's argument, concluding that Autry had had a sufficient opportunity to secure witnesses, that the expedited hearing before the district court was proper, and that the district court properly denied relief.[10]

Immediately after this court's decision, however, the Supreme Court granted a stay of execution on another issue. On our own motion, we then issued an additional opinion remanding the case to the district court for a more complete evidentiary hear-

---

7. *Townsend*, 372 U.S. at 318, 83 S.Ct. at 760 (emphasis added).

8. *Autry v. Estelle*, 719 F.2d 1251, 1252 (5th Cir. 1983).

9. *See Autry v. Estelle*, 706 F.2d 1394 (5th Cir.) (*Autry I*), *stay denied*, 464 U.S. 1, 104 S.Ct. 20, 78 L.Ed.2d 1 (1983).

10. *Autry v. Estelle*, 719 F.2d 1247 (5th Cir.) (*Autry II*), *stay granted*, 464 U.S. 1301, 104 S.Ct. 24,

ing.[11] In doing so, "we explained that our action was not required by any found deficiency in the most recent evidentiary hearing but was to afford a death sentenced prisoner every opportunity to present his claims consistent with the interest of the state, the balance of which had changed with the issued stay." [12]

*Autry* is, of course, factually distinguishable from *Wilson*. *Autry* involved a last-minute hearing which resulted in a finding of insufficient evidence to support the petitioner's claim; [13] in the instant case there has been no hearing at all. Instead, the district court held that Wilson's allegations in support of two factually-related claims were insufficient to require a hearing. In *Autry*, this court fully affirmed the district court's decision and rejected Autry's assertion that the expedited hearing was inadequate, because of time exigencies, to permit a fair consideration of his claim.[14] In the instant case, in contrast, we affirmed the district court's conclusion as to two of Wilson's ineffective assistance claims, but reversed the conclusion that Wilson's allegations in support of a third claim were insufficient to require a hearing.

Despite the factual differences between the cases, the issue resolved in *Autry* was conceptually similar to the issue presented here. In *Autry* we concluded, independently of the merits of the petitioner's claim, that two factors supported remanding the ineffective assistance claim for further proceedings.[15] First, we emphasized that *Autry* was a death penalty case involving an allegation (although already properly rejected) that the district court's factfinding procedures had been inadequate to permit proper consideration of the petitioner's claim. We recognized as a basic principle of justice that, if death is involved, the petitioner should be presented every opportunity possible, consistent with the interests of the state, to present facts relevant to his constitutional claims. The second factor we cited was the absence of a competing state interest in preventing a remand to permit additional consideration of Autry's claim. As in the instant case, no execution date was pending so that a remand would not interfere with the state's interest in the faithful execution of its judgment. Also, since a hearing had previously been ordered, further factfinding would create no additional tension in federal-state relations.

The two factors that proved decisive in *Autry* are present here. First, this is a death penalty case involving an allegation that the district court's procedures were inadequate to permit proper consideration of Wilson's claim that he was denied effective assistance at the guilt phase of his trial. Second, there is no real justification for refusing to consider evidence produced as it relates to this claim.

We therefore grant the petition for rehearing and remand with directions to the district court to consider the evidence presented at the evidentiary hearing to the extent that evidence is relevant to each of Wilson's ineffective assistance claims: the claim that, at the guilt phase of the trial, counsel was ineffective both because he failed to raise the insanity defense and because he failed to challenge Wilson's competence to stand trial; and the claim that, at the sentencing phase, counsel was ineffective because he failed to present evidence of mitigating circumstances. In doing so we repeat that the standard for each of the claims is different and that our remand intimates no other change in our original opinion.

EDITH H. JONES, Circuit Judge, dissenting:

The panel adheres to our initial opinion, which concluded that Wilson did not allege

---

78 L.Ed.2d 7 (1983), *cert. denied,* 465 U.S. 1085, 104 S.Ct. 1458, 79 L.Ed.2d 906 (1984).

**11.** *Autry v. Estelle,* 719 F.2d 1251 (5th Cir.1983) (*Autry III*).

**12.** *Autry v. McKaskle,* 727 F.2d 358, 360 (5th Cir.) (*Autry IV*), *cert. denied,* 465 U.S. 1090, 104 S.Ct. 1462, 79 L.Ed.2d 909 (1984).

**13.** *Autry II,* 719 F.2d at 1248–49.

**14.** *Id.* at 1249–50.

**15.** *Autry III,* 719 F.2d at 1252.

facts sufficient to state a claim of constitutional ineffectiveness of counsel at the guilt phase on the issue of petitioner's competency or sanity. Incongruously, however, the majority remands this issue for an evidentiary hearing in the district court. I respectfully dissent.

The majority advance two reasons in support of remand. First, they consider it a matter of clemency because Wilson's is a capital case. Second, they find that the marginal added inconvenience to the state of including this issue in an evidentiary hearing does not outweigh the petitioner's rights because the same general evidence will be introduced on this issue as on the claim we have already remanded.

My perspective on clemency is different. Petitioner is represented in this Court, as he was at trial, by extremely diligent counsel. Should we not assume his appellate counsel obtained the strongest possible psychiatric affidavit to fortify petitioner's belated insanity or incompetency claims? If the affidavit was nevertheless insufficient to comport with Louisiana law establishing the insanity defense or with *Bruce v. Estelle*, 483 F.2d 1031 (5th Cir.1973), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977), we raise false hopes in the petitioner to offer him a hearing on counsel's effectiveness at the guilt phase of the trial.

Reviving this facially invalid claim also unnecessarily burdens the federal district court and the state. Admittedly, the facts that bear upon the issues remanded for trial here are about as closely intertwined as one can imagine. Even if the evidence on guilt phase competency parallels that on competency at the sentencing phase of trial, however, additional briefing, opinion writing and appellate review efforts will be required. *Townsend v. Sain* counseled against mis-spending scarce judicial resources in the trial of frivolous claims not only because such expenditure is wasteful but because it results in "acute and unnec-

essary friction" with the state's criminal law enforcement process. 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1961). For this latter reason, the fact that a hearing has already been ordered on one facially plausible claim should not open for review other meritless issues simply because they are factually similar. I would rely on the unquestioned integrity of the state judicial process and the obvious care with which petitioner's habeas counsel framed his issues and evidence as justifications for denying petitioner a futile second bite at the apple on his trial counsel's effectiveness at the guilt phase.

My final disagreement with the majority lies in their interpretation of *Autry v. Estelle*, 719 F.2d 1251, 1252 (5th Cir.1983). I regard *Autry* as sui generis, because, as the majority acknowledge, *Autry's* first hearing on competency of counsel was requested, set and heard within 24 hours of his scheduled execution. No such expedition attended this petitioner's presentation of issues in the district court. Moreover, the district court had found *Autry's* allegations sufficient to warrant an evidentiary hearing in the first place. Neither the district court nor this court, acting in Wilson's case, reached this conclusion. Thus, unlike the majority, I regard the factual distinctions from *Autry* as insurmountable for Wilson.[1]

I respectfully dissent from the majority's order on rehearing.

---

1. The majority do not seem to suggest, and I fully share their reluctance to conclude, that *Autry* mandates or militates toward holding a federal evidentiary hearing in every capital case. To do so would surely run afoul of concerns of federalism engrafted upon habeas corpus review. *See also Barefoot v. Estelle*, 463 U.S. 880, 887–88, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090 (1983).